Enoch A. Osborn and Verna N. Osborn v. Commissioner.
Osborn v. Commissioner
Docket No. 35932.
United States Tax Court
1953 Tax Ct. Memo LEXIS 90; 12 T.C.M. (CCH) 1165; T.C.M. (RIA) 53332; October 14, 1953
*90 It being shown affirmatively that the determination of a deficiency as made by respondent is in error, and there being no evidence indicating that income of the petitioners was understated, the determination by the respondent is reversed. Harry Bangilsdorf, Esq., 180 Matthews Street, Binghamton, N. Y., for the petitioners. Francis J. Butler, Esq., for the respondent. BRUCE Memorandum Findings of Fact and Opinion BRUCE, Judge: Respondent has determined a deficiency in income tax of the petitioners for the year 1948 in the sum of $833.88. This deficiency arises through respondent's action in increasing gross income in the amount of $6,182.41, by increasing net receipts by the sum of $5,334.33 and the elimination of expenses in the sum of $848.08. The correctness of respondent's action is the issue presented. Findings of Fact The petitioners are husband and wife and residents of Owego, New York. They filed a joint return for the calendar year 1948 with the collector of internal revenue at Syracuse, New York. The petitioner Verna Nye Osborn, hereinafter referred to as Verna, was during the taxable year the owner and operator of a restaurant and bakery *91 located at 75 North Avenue, Owego, New York. The bakery was established by Verna's father in 1876 and Verna acquired a half interest therein in 1917. Verna's father died in 1919, leaving his interest in the business to Verna's mother. Verna at that time was married to one Dennis McCarthy, and she and her husband acquired from her mother in 1920 the one-half interest in the business then held by the mother. Verna also acquired individually from her mother the premises at 75 North Avenue in which the business was carried on. In 1921 Verna established, in connection with the bakery and at the same location, a restaurant. The aforementioned bakery was operated by Verna and her then husband until 1936, when they separated and were divorced the year following. Upon Verna's divorce from Dennis McCarthy, she sold to the latter her entire interest in the bakery and restaurant for the sum of $9,000 which was paid her. In addition, she leased to McCarthy the premises in which the business was carried on for a rental of $150 per month. Thereupon she left Owego, New York, and was absent for a period of approximately five years, during which time she was employed in various situations and earned *92 a living. In 1942 Verna returned to Owego. In the meantime she had married her present husband, the other petitioner herein. Verna's former husband, Dennis McCarthy, was at this time involved in financial difficulties and unable to operate the business longer, which was attached by certain of his creditors, and Verna bought the business at creditors' sale, since which she and her present husband, working as her employee, have operated it. At the time of Verna's return to Owego in 1942, she possessed, in addition to the property at 75 North Avenue, Owego, a sum of between $9,000 and $10,000, representing personal earnings saved, together with the amount paid her by her former husband several years before, as detailed above. The business as operated by Verna and her present husband maintained merely a single entry set of books. All sales were cash and were rung up on the cash register. The method used of recording sales was that the cash register tape was taken off each night at the close of business and the amount shown thereon as gross sales was entered in a memorandum book, setting out the amount taken in by the bakery and that by the restaurant as separate items. The entry for *93 the preceding day in this memorandum book showed the amount of cash on hand in the cash register upon the opening of business, and the cash was then checked and reconciled with the total appearing on the cash register tape. At times a slight discrepancy, never more than one dollar, either in overage or shortage, would be found as having occurred in the making of change, and this would be entered in the memorandum book and taken into account to show the total on hand as carried to the succeeding day. Approximately twice a week deposits of cash would be made in the bank and these would be entered in the memorandum book, the total cash on hand being reduced by the amount of such recorded deposit. The gross receipts of the bakery and the lunch room rarely ever exceeded $200 per day for each, in most instances being much less than this amount. In the latter part of the taxable year there were entered in the memorandum book, on five different dates, amounts in addition to the items set out as representing receipts of the bakery or the lunch room. These items had each a notation on the book as representing their character. These items, the dates entered and the designation of each were *94 as follows: Aug. 4, 1948
In Verna
1100.00
Oct. 28, 1948
Verna in
2000.00
Nov. 2, 1948
Verna
500.00
Nov. 3, 1948
Verna in
500.00
Dec. 9, 1948
In
800.00
The entries on the record book following the dates on which these above entries appear record these amounts as included in deposits made in the bank together with monies representing receipts from the operation of the bakery and restaurant. Verna employed her husband, the other petitioner herein, as manager of the restaurant at a salary of $300 per month, the total of which, or $3,600, was duly reported as income on the joint return filed by the two petitioners. The gross receipts from the business entered on the single entry set of books were taken from the day by day entries in the memorandum book kept as above described. The total so entered was in the sum of $118,250.53, and this amount was used in computing net income from the business reported on the petitioners' joint return. This amount of gross income so entered did not include the five items set out above on five different dates in the latter part of the taxable year. Subsequent to the tax year 1948 an examination was made of petitioners' *95 books and records by a revenue agent and attention called to the discrepancy between gross receipts of the business as recorded on the books and as shown by deposits made to the account of the business in the bank. The revenue agent was advised by the petitioners that these five items in question did not represent income of the business but personal funds of Verna which it had been necessary for her to put in the business from time to time during that year as it was in urgent need of cash to meet outstanding obligations. He was advised that the funds to make these payments into the business were taken by Verna from her safe deposit box at a bank and some from a locked box kept by her in the safe at the place of business. This explanation was disregarded by the revenue agent for the reason that his inspection of the safe deposit card record covering the box of this petitioner disclosed, as he thought, only one visit made to such box during the calendar year 1948, this being in February of that year. The records of the bank, however, disclose that visits were made to the box in 1948 on February 11, March 3, May 7, and November 3. The revenue agent in making his investigation determined *96 a total amount as representing gross receipts of the business in the sum as set out in the deficiency notice. Just how he arrived at this amount is not disclosed by the record except that it was by "cash analysis using bank deposits, business expenses paid in cash, plus estimated living expenses paid in cash". Only one definite adjustment as made by the revenue agent is shown, this being his disallowance of a total of $326.50 taken as a deduction and representing various contributions in amounts from one to twenty-five dollars. The five items set out above in our findings representing sums in round figures ranging from $500 to $2,000 did not represent cash receipts of the business but money from another source put into the business. Opinion Petitioner's counsel complains that he is not advised and is unable to determine how the revenue agent arrived at the total gross and net income accepted by respondent in determining the deficiency, and it is impossible to determine from the information given us by respondent's counsel how the figures were arrived at. Counsel for respondent states that the increase from $118,250.53 to $127,914.86 in gross receipts from the operation of the *97 business results from adding to the income of the business the $3,600 salary received by the petitioner Enoch A. Osborn, plus rental receipts of $730. Such adjustment manifestly would not result in the total found. Not only is this the case, but the rental receipts of $730 appear to have nothing to do with the operation of the business but are receipts from apartments owned by the petitioner Verna Osborn, and this income appears to have been reported on the joint return filed. The revenue agent was present as a witness and admitted that he had disallowed all of the contributions taken as deductions. It does not appear that any of these were disputed in amount or character, the agent stating that he disallowed them as not representing business deductions. He appears to have given no thought to the fact that the business here in question was wholly owned by the petitioner Verna N. Osborn, and the only bank account that appears to have been maintained was an account of hers in the name of the Nye Baking Company. We have in evidence a number of checks in payment of personal expenditures by this petitioner, including payments of income taxes, all with checks drawn on this account. The *98 contributions in question clearly qualify as personal deductions by the petitioner Verna N. Osborn, and they appear to be in large part strictly charitable contributions. It is also noted that after computing income in the manner above described, petitioners have been arbitrarily granted a standard deduction in computing the tax liability, when they have made no election for a computation on this basis. The result of this action has been to eliminate all of the separate deductions taken by the petitioners on their joint return. Moreover, the revenue agent admits, and respondent's counsel concedes, that he erred in his investigation in failing to allow two items totaling $220.15. On the record, we have found that the five items included in the bank deposits to the credit of the Nye Baking Company, totaling $4,900, did not represent gross receipts of the business and were manifestly included by the revenue agent in error. These sums are in round figures ranging from $500 to $2,000. They bear no relation in amount to the average daily sales in the bakery and restaurant. There is no indication of any other source of taxable income except from the business and apartments. It appears that *99 the statement made by the petitioners to the revenue agent as to the source of these payments was disregarded by him due to the fact that his investigation of the bank safety deposit box records showed only one visit by Verna to her box in the taxable year, this being in February of that year. If this fact were true it would have reflected on the credibility of the testimony given to the effect that a portion of these funds came from the bank safety deposit box. However, we find instead that the testimony of the revenue agent is discredited by the stipulation of the parties that the records of the bank show three visits to the box subsequent to the one on February 11, one being as late as November 3. This discrepancy is almost the total increase as made by the revenue agent. Other items in which error on the part of the agent is apparent to us account for practically the entire balance of such increase. In fact we are, on the record, able to determine not one adjustment as made by the agent in his examination to have been proper and justified. In the deplorable state of the record, one fact emerges clear in our opinion. This is that the examination by the revenue agent in arriving *100 at his conclusion is so definitely erroneous that it cannot be used as the basis for the determination of any additional tax liability on the part of the petitioners. As the figures resulting from this investigation have been accepted by the respondent and are the figures used in the determination of deficiency by him, this deficiency must fall. Decision will be entered for the petitioners.